IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

United States of America

      v.                                        Docket No. 1:22-MJ-11 (GMH)

Markus Maly

**Motion for District Court to Review Magistrate's Detention Order**

This motion presents the following question: Can conditions of release reasonably assure the safety of the community for a working father of four with a stable residence and ties to his home community, even though he has a criminal record, when he is not alleged to have engaged in any criminal activity between the time of the alleged crimes and now, more than a year later? Yes. As such, the court must release Mr. Maly. *See* 18 U.S.C. 3142(f).

**Relevant Background**

Mr. Maly lives in western Virginia with his coparent and her parents and with his children. He has a steady job, and though he has a lengthy criminal record, most of it is old and dates to a time when he abused prescription opioids and other drugs. Since moving to Virginia from Florida and stopping the use of illegal drugs, he has had minimal, incidental contact with the law related solely to driving offenses. He works to support his children, two of whom have autism, and one of whom is just six months old. His co-parent cares for the children and is unemployed, but relies on Mr. Maly to do the shopping, driving, and errands for the household. She has severe anxiety and tends not to leave the house. The support he provides to his family, his employment, and his stable residence all significantly help to demonstrate that he has reason to abide by any conditions of release this court may impose.

Mr. Maly is charged with a number of offenses related to the January 6 attack on the United States Capitol. Notably, Mr. Maly is not alleged to have entered the Capitol building, damaged any government property, or physically assaulted any officer. As discussed below, Mr. Maly's charge for assaulting with a dangerous weapon is based more on conjecture than evidence, and even supported by probable cause, is mitigated by Mr. Maly's later conduct: Mr. Maly seems to have left the Capitol grounds shortly after 3:00 pm—before then-President Elect Biden addressed the nation, then-President Trump addressed the protestors, and before the national guard helped secure the grounds. By leaving the Capitol voluntarily, without trespassing in any obviously off-limits areas, Mr. Maly's activity more than a year ago does not present unmitigable evidence that he cannot be released on any conditions of pretrial release. Because the magistrate concluded otherwise, Mr. Maly requests this court review that decision pursuant to 18 U.S.C. 3145(b).

1. **Mr. Maly was at the Capitol on January 6, but minimal circumstantial evidence suggests he committed any acts of violence.**

The government minimizes its dearth of evidence that Mr. Maly committed any violent acts by relying on the wealth of evidence that Mr. Maly was physically present at the Capitol on January 6. A close examination of the government's affidavit in support of Mr. Maly's arrest shows just how weak the government's case is that Mr. Maly committed an act of violence.

The government relies on screenshots of body camera footage showing a person who appears to have clothing similar to Mr. Maly holding a canister of what might be chemical

spray. That person is seen wearing a cowboy hat and a black beanie at 2:35 pm.



However, the Metropolitan Police have an image of Mr. Maly just two minutes later, at 2:37 pm, where he is not seen wearing a cowboy hat or a black beanie.



Image 3 – Screenshot of AFO-324 from D.C. Metropolitan Police Posting[1]

It is possible, obviously, that Mr. Maly could have removed his hat and beanie. However, the cowboy hat is the main source of identification at this point. Otherwise, the government is merely relying on evidence that a white person wearing a dark or black jacket over a grey jacket held a can of something that might be chemical spray. Put simply, although the suspect in the body camera footage is wearing some clothing consistent with Mr. Maly, he is also wearing two hats, neither of which is seen in a clear photograph of Mr. Maly taken two minutes after the video of the suspect.

Finally, the evidence that Mr. Maly deployed chemical spray at the police is not based on any surveillance footage that captures that alleged act. Instead, the government premises its conclusion on two sets of facts: 1) a suspect is seen pointing a can of what might be chemical spray at officers in image 8; and, 2) orange chemical spray is seen two minutes later on an officer's shield in image 9. Other video evidence shows that many people were spraying orange chemical spray in that officer's general direction around the same time. In the "resistance video" referenced in the government's affidavit, between time stamps 48:49 and 49:27, several other people appear to spray an orange chemical toward police. In contrast, the suspect can be seen with a can that, if it sprayed anything, appeared to spray a clear or white concentrated spray—inconsistent with the spray the government claims came from the suspect's can shown in image 9.

The government's evidence that Mr. Maly committed a crime of violence relies on many assumptions: that Mr. Maly is the same person as the suspect, despite the suspect wearing two hats that are not visible in the photograph of Mr. Maly; that the suspect possessed a can of chemical spray, and not some other canister (such as inert training spray or an empty canister of spray); that the suspect actually deployed chemical spray; that the chemical spray was directed at officers; that the spray actually made contact with officers;

and that, for whatever reason, the suspect's canister sprayed orange spray one moment and clear or white spray, if any, another.

The strength of the evidence against the defendant is a factor for the court to consider in determining release conditions. *See* 18 U.S.C. § 3142(f). It is often seen as the least important factor, and one that traditionally relates more to the risk of flight than to whether the defendant presents an unmitigable danger to the community. However, where the government's evidence is weak, the calculous should change. A weak case against a person helps show that the defendant is not among the "small but identifiable group of particularly dangerous defendants as to whom neither the imposition of stringent release conditions nor the prospect of release can reasonably assure the safety of the community or other persons." S. Rep. No. 225, 98th Cong. 6 – 7 (1983).

2. **Mr. Maly's criminal record may be long, but it is explained by his prior addiction to controlled drugs, and his relocation and changed family dynamics help explain his minimal contacts with law enforcement within the past decade.**

Mr. Maly moved to western Virginia seven years ago. Since then, he has had minimal contact with the criminal legal system, almost all of it related to motor vehicle offenses. By leaving Florida to be closer to his partner's family, Mr. Maly made a concerted effort to turn his life around. Before that decision, Mr. Maly vacillated in and out of jail for crimes that were largely associated with his substance abuse. For Mr. Maly, leaving his old community helped him to beat addiction and become a productive member of society. Since then, he and his partner have had two more children, maintained a stable residence, and lived a relatively quiet life.

Courts generally give less weight to convictions that occurred long ago. *See* 18 U.S.C. § 3142(e)(2)(A) (limiting a serious presumption of detention to a small subset of allegations

and to defendants who were convicted of certain offenses within the past five years)*;* *Gordon v. United States*, 383 F.2d 936, 940 (D.C. Cir. 1967) (discussing the relative importance of "[t]he nearness or remoteness of the prior conviction" even one of "fraud or stealing" in determining whether a court erred in admitting a prior conviction); Fed. R. Evid. 609(b) (limiting the admissibility of convictions that are more than ten years old); USSG §4A1.2(e) imposing a fifteen-year window on sentences exceeding thirteen months in calculating sentencing guidelines). Though these authorities are not directly on point, they support the proposition that dated criminal conduct is less relevant to the court's considerations during the bail decision, at trial, and at sentencing. Mr. Gray's record, although troublesome, is mitigated because most of it is quite old, and nearly all of it was followed by seven years of minimal interaction with law enforcement, and the past year has involved no convictions or allegations of any criminal activity.

If we are to believe that incarceration can rehabilitate individuals, we ought to credit them when people with significant records demonstrate long stretches of law-abiding, productive behavior. Mr. Maly's past criminal record does not show that he cannot be trusted; instead it shows that court intervention worked. He is clearly not the person he was when he was convicted of many of the crimes from his distant past. He is a working father who supports his family and is willing to obey any conditions this court might impose.

3. **Conditions of release can reasonably assure the safety of the community and Mr. Maly's appearance in court.**

If any condition or combination of conditions can "reasonably assure" the safety of the community and Mr. Maly's appearance in court, the court must release Mr. Maly. *See* 18 U.S.C. 1342(g). Given the breadth of options available to the court and Mr. Maly's dated

criminal conduct, the court can be reasonably assured that the community will be safe should Mr. Maly be released.

Mr. Maly is willing to agree to wear an electronic monitoring device to allow pretrial services to monitor his whereabouts pending trial. This condition not only serves as a significant deprivation of liberty and a mechanism to track Mr. Maly's whereabouts, but also should help the court be confident that Mr. Maly will abide by other conditions. For example, the court could order that Mr. Maly report regularly to pretrial services or his local police department to periodically check in. Electronic monitoring can help to ensure Mr. Maly abides by this condition. The Court can also order Mr. Maly not to travel to the District of Columbia or leave the Western District of Virginia except for pre-approved times or court appearances. Electronic monitoring can help ensure Mr. Maly abides by these conditions. The Court could also order a curfew, impose a ban on Mr. Maly attending large gatherings, or any other condition that the court believed could help assure the safety of the community. Finally, Mr. Maly's in-laws, neither of whom has a criminal record, would be willing to act as third-party custodians to help ensure that he follows the court's orders.

Unlike many people who were present at the Capitol on January 6, Mr. Maly is not alleged to have entered the building. He was neither among the first group of protestors who stormed the building, nor among those who remained until physically escorted away by the police. He did not break into the building, climb through a window, or push past police who were blocking entrances. He remained outside, and no evidence suggests that he crossed any obvious police lines. By the time he was in any prohibited area (if at all), the police had already significantly retreated, and few, if any barriers were in place. Indeed, if the government's evidence is to be credited, Mr. Maly was in direct contact with police for seven minutes inside the Lower West Terrace Tunnel. During that time, he is not charged

with engaging in any violent behavior toward them.[1] His behavior after he is alleged to have assaulted officers demonstrates that he can be released without any threat to the community. Apart from allegations that comprise a fraction of a second of the time that Mr. Maly was at the Capitol, all of his behavior was peaceful. The fact that Mr. Maly left the grounds voluntarily, refused to go inside the building, and did not physically assaulted anyone, are all significant facts that weigh in favor of his release, not his detention.

## Conclusion

Conditions of release can reasonably assure the safety of the community and Mr. Maly's presence in court. Although some of his charges are serious, they are explained by a unique circumstance that led more than seven hundred people to commit crimes. Unlike many of those detained for their behavior on January 6, nothing about Mr. Maly's charges, his background, or his later conduct shows that he poses any future danger to the community. His peaceful time in the ensuing year, spent working and supporting his family, shows that he can be released while reasonably assuring the safety of the community and his appearance in court.

Respectfully submitted,


/s/ Benjamin M. Schiffelbein
  Asst. Federal Public Defender
   for the Western District of Virginia
  NH Bar No. 267593
  210 First Street SW, Room 400
  Roanoke, Virginia 24011
  Ph. (540) 777-0880
  Fax (540) 777-0890
  Benjamin_Schiffelbein@fd.org

---

[1] The government claims that Mr. Maly obtained a police riot shield. But given the absence of evidence within the petition about how Mr. Maly obtained it, the court should not presume that it was done violently. Indeed, when later confronted by police, Mr. May peacefully relinquished that item.